**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

Kenneth Lee Zierler,

Plaintiff,

v.

Winnebago County Sheriff Department, Winnebago County Jail, and Winnebago County State's Attorney's Office,

Defendants.

Case No. 3:20-cv-50329

Honorable Iain D. Johnston

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kenneth Lee Zierler brings this case against Defendants Winnebago County Sheriff Department,[1] Winnebago County Jail, and Winnebago County State's Attorney's Office[2] (collectively "Defendants") under 42 U.S.C. § 1983. Defendants now move for summary judgment. For the following reasons, the Court grants summary judgment.

## I. Legal Standard

### A. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

[1] Although the case caption names the Winnebago County Sheriff Department, Mr. Zierler's amended complaint specifies this is Sheriff Gary Caruana in his official capacity. Dkt. 43 at 3.
[2] Although the case caption names the Winnebago County State's Attorney's Office, Mr. Zierler's amended complaint specifies this was former Winnebago County State's Attorney Marilyn Ross. Dkt. 43 at 3. The Winnebago County State's Attorney is now J. Hanley, so the defendant is State's Attorney Hanley in his official capacity. *See* Fed. R. Civ. P. 25(d).

of law." Fed. R. Civ. P. 56(a). Material facts are those that might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must construe the "evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). But "[w]here two parties tell two different stories, one of which has no support in the record, the Court does not adopt the unsupported version of the facts." *Karim v. Obaisi*, No. 14 C 1318, 2017 U.S. Dist. LEXIS 149383, at *10 (N.D. Ill. Sept. 14, 2017). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby*, 477 U.S. at 248; *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). "Speculation is insufficient to withstand summary judgment." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996). Indeed, "the nonmoving party must do more than simply show there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

**B. Local Rule 56.1**

"On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). The statements serve a valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). Local Rule 56.1 requires a party seeking summary judgment to file an accompanying statement of facts, with numbered paragraphs and citations to

the record supporting those facts. *See* LR 56.1(d). "Factual allegations not properly supported by citation to the record are nullities." *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). In addition, these factual allegations "should not contain legal argument." LR 56.1(d)(4).

To respond, the party opposing summary judgment must file its response as a separate document. *See* LR 56.1(b)(2); *see also* Dkt. 71 at 2 (LR 56.2 Notice to Unrepresented Litigant Opposing Motion for Summary Judgment). For each asserted fact, the opposing party "must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." LR 56.1(e)(2). To dispute a fact, the response must "cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." LR 56.1(e)(3). If disputing only part of an asserted fact, "it must specify which part of the asserted fact is admitted and which part is disputed." *Id.* The opposing party's response "may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." LR 56.1(e)(2). The response also "may not assert legal arguments except to make an objection." *Id.*

To assert new facts, the opposing party must file its own statement of facts. LR 56.1(b)(3). The opposing party's statement of additional facts must follow the same form, with numbered paragraphs and citations to the record supporting those facts. LR 56.1(b)(3), (d). And like the statement of facts, there should be no legal argument in the additional factual allegations. *See id.*

"District courts are 'entitled to expect strict compliance' with Rule 56.1, and do not abuse their discretion when they opt to disregard facts presented in a manner that does not follow the rule's instructions." *Gbur v. City of Harvey*, 835 F. Supp. 2d 600, 606-07 (N.D. Ill. 2011); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). The requirements of Local Rule 56.1 apply equally to *pro se* plaintiffs. *See Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure.").[3] "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3); *see also Waldridge*, 24 F.3d at 922. Similarly, facts not otherwise included in the statement of facts may be ignored. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 810 (7th Cir. 2005). The Court is not required to scour the record for evidence or factual disputes. *Waldridge*, 24 F.3d at 921-22.

## II. Background

The facts in this case are undisputed because of Mr. Zierler's failure to comply with LR 56.1. Mr. Zierler did not file a separate response to Defendants' statement of facts, Dkt. 69 ("SOF"). His only response to the statement of facts is addressing SOF 2 in his response brief, but he does not cite to any evidence in disputing the asserted fact. *See* Dkt. 75 at 1-2. In his brief, Mr. Zierler also responds to some of the declarations that were attached to the statement of facts, Dkt. 75 at

[3] The Court fully explained Rule 56.1 to Mr. Zierler, including the consequences of failing to comply. Dkt. 64 ("The Court fully explained the summary judgment procedure to Mr. Zierler in detail.").

2-8, but these new facts should have been submitted in an additional statement of facts. *See* LR 56.1(b)(3).

In September 2018, Mr. Zierler resided with his then-wife, Shelly Hart (Shelly Zierler at the time). SOF 1. Their son, daughter, and daughter's boyfriend also lived with them. SOF 2. On September 16, 2018, the couple got into an argument, which caused Ms. Hart to want to leave their house. SOF 8-9. After some more conflict, Ms. Hart was eventually able to drive out of the garage. SOF 11-14. She parked nearby, next to the Rock River, to think about her marriage. SOF 14. While Ms. Hart was out of the house, Mr. Zierler called the police, claiming that Ms. Hart was trying to commit suicide. SOF 15. Deputies Mathew Hines and Adrienne Horn were dispatched to the residence. *Id.* Mr. Zierler told Deputy Horn that he had served in the military, had post-traumatic stress disorder (PTSD), was in the process of a divorce, and had firearms in the house. SOF 16.

Ms. Hart returned to their house after the deputies left. *See* SOF 17-18. As she got ready for bed, Mr. Zierler kept putting their dogs on her bed (they slept separately). SOF 7, 19, 23. After one of these instances, Mr. Zierler then pulled out a black handgun and pointed it at Ms. Hart. SOF 24, 26. Ms. Hart thought Mr. Zierler might shoot her. SOF 27. When she attempted to speak to Mr. Zierler, he started yelling that she was going to hit him. SOF 28. Mr. Zierler then called the police, and Deputies Hines and Horn arrived once again. SOF 29. Ms. Hart recounted the incident with the handgun to the deputies; she also told them that Mr. Zierler had anxiety and PTSD from military service, conceal carried firearms,

and may not have been taking his medications. SOF 32-33. Deputy Hines then arrested Mr. Zierler for aggravated assault. SOF 34.

After the arrest, Ms. Hart gave the deputies permission to search the house. SOF 35. Ms. Hart also filled out a Domestic Violence Lethality Screen for Law Enforcement form, in which she wrote that she was worried for her safety because of all the guns Mr. Zierler kept in the house. SOF 37. The deputies found the handgun that Mr. Zierler had pointed at Ms. Hart, as well as multiple firearms and ammunition, all of which they removed for safekeeping. SOF 36, 39.

Deputy Hines then transported Mr. Zierler to the Winnebago County Jail. SOF 52. Mr. Zierler was booked on September 17, 2018, at 12:15 AM. SOF 53. Later that day, Mr. Zierler was arraigned in Illinois state court on his aggravated assault charge. SOF 54. While in jail, Mr. Zierler was also given omeprazole, which he normally took because of an esophagus condition. SOF 61-62; Dkt. 43 at 6. At 9:09 PM, Ms. Hart bailed Mr. Zierler out of jail by paying bond. SOF 64-65. Mr. Zierler's aggravated assault charge was eventually dismissed. SOF 68. All his firearms and ammunition have since been returned. SOF 78.

Mr. Zierler had a coin collection that was kept in a safe in the basement of the couple's house. SOF 42. He last saw the collection three or four days before his arrest on September 16, 2018. SOF 50. In November 2018, returning from a cruise, Ms. Hart discovered that the coins were gone and that the safe door was left open. SOF 73. Mr. Zierler also claims that his cell phones are missing. Dkt. 75 at 9.

## III. Analysis

Mr. Zierler alleges several constitutional violations: false arrest, false imprisonment, improper seizure of his property (guns, coins, cell phones), and deliberate indifference. His amended complaint also mentions the Americans with Disabilities Act (ADA) in passing, though it is unclear if he has alleged a separate claim under the ADA. *See* Dkt. 43 at 1, 6-7. For each of the defendants, the Court finds that Mr. Zierler's claims do not survive summary judgment. In addition, the Court finds the additional arguments that Mr. Zierler raised in his response brief to be meritless.

### A. Winnebago County Sheriff Department

Because the Winnebago County Sheriff Department ("Sheriff Department") is a local entity, Mr. Zierler must establish municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See Braun v. Vill. of Palatine*, 56 F.4th 542, 545 (7th Cir. 2022). If the allegations involve the behavior of municipal employees (as opposed to the municipality itself), a plaintiff must connect the deprivation of a constitutional right to "(1) an express policy, (2) a widespread practice or custom, or (3) action by one with final policy making authority." *Stockton v. Milwaukee County*, 44 F.4th 605, 617 (7th Cir. 2022). In showing a practice or custom, there needs to be "a *widespread practice* that permeates a critical mass of an institutional body." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015).

The factual record contains no evidence to support any policy, practice, or custom of the Winnebago County Sheriff Department that would have led to Mr.

Zierler's claims. In the statement of facts, there are only two mentions of Sheriff Department policies or practices at the time of Mr. Zierler's incarceration.

First, the practice for scheduling arraignments was to, on a given day, schedule anyone who had been arrested within the 24 hours before 4:30 AM that day to be arraigned later that same day. SOF 57. There is no evidence supporting a policy, practice, or custom that could lead to 48 hours without a judicial determination of probable cause. In Mr. Zierler's case, he was taken to jail just after midnight on September 17, 2018, and he was arraigned on September 17, 2018. SOF 53-54. The facts show that the Sheriff Department practice was to schedule arraignments within 48 hours of a person arriving to the jail and that the practice led to Mr. Zierler being taken before a judge within 24 hours.

Second, the Sheriff's Department had "an official written policy directing the provision of immediate care in case of an injury or sickness." SOF 58. There is no evidence of a widespread practice or custom that an incarcerated person would not receive medication that was needed. In addition, the facts show that Mr. Zierler received the omeprazole that he needed for his esophagus condition. *See* SOF 61-62.

As for Mr. Zierler's other alleged constitutional violations (false arrest, improper seizure of property, deliberate indifference), even if the two individual deputies had behaved as Mr. Zierler claims, there are no facts to support that they did so because of a widespread policy or practice. There is nothing about, for example, how often the deputies might engage in such behavior or whether other deputies did the same. *See Rossi*, 790 F.3d at 737 ("[M]isbehavior by one or a group

of officials is only relevant where it can be tied to the policy, customs, or practices of the institution as a whole.").

Nor is there any evidence that would suggest someone with final policymaking authority made decisions regarding the treatment of Mr. Zierler. There is nothing to suggest that Deputy Hines or Horn were decisionmakers for *Monell* purposes. And Sheriff Caruana did not personally make any decisions regarding when Mr. Zierler would be arraigned or what medical care he would receive. SOF 56, 60.

No reasonable jury could conclude that the Sheriff Department had any polices, practices, or customs that would have led to the alleged constitutional violations in Mr. Zierler's claims, so his § 1983 claims against the Sheriff Department do not survive summary judgment.

To the extent that Mr. Zierler has alleged a claim under the Americans with Disabilities Act, there is also no evidence that would allow a reasonable jury to find in favor of Mr. Zierler. To establish a violation of Title II of the ADA, a plaintiff must prove that the plaintiff is a "qualified individual with a disability" and that the plaintiff faced a denial of benefits or discrimination by a public entity because of the plaintiff's disability. *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. § 12132); *see also Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015).[4] Mr. Zierler has not explained how he is a "qualified individual with

[4] The Seventh Circuit has only assumed, but not decided, whether Title II of the ADA applies to law enforcement investigations and arrests. *King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 988-89 (7th Cir. 2020).

a disability" or what could have been different to better accommodate him, nor is there any evidentiary support for this claim.

**B. Winnebago County State's Attorney's Office**

"The Eleventh Amendment prohibits federal courts from deciding suits brought by private litigants against states or their agencies, and that prohibition extends to state officials acting in their official capacities." *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). The State's Attorney's Office is a state agency and state's attorneys are state officials, so the Eleventh Amendment bars any claims brought in federal court against the Winnebago County State's Attorney's Office. *Id.*; *see Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 265 (7th Cir. 1999). Mr. Zierler does not address this argument in his response, so his claims against the Winnebago County State's Attorney's Office are barred.

**C. Winnebago County Jail**

The Winnebago County Jail is a not a suable entity under § 1983 because it is a building, not a "person" capable of being sued. *See Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). Mr. Zierler cannot maintain his claims against the Winnebago County Jail.

**D. Additional Arguments**

In his response brief, Mr. Zierler raises two arguments that are separate from his claims. The Court finds both to be without merit.

First, Mr. Zierler argues that Defendants have been untruthful. *E.g.*, Dkt. 75 at 1. But under Local Rule 56.1, he could have disputed the facts that Defendants

presented and provided an additional statement of facts with supporting evidence. LR 56.1(b)(2)-(3). As explained above, because Mr. Zierler did not comply with the rules, Defendants' asserted facts are deemed as admitted. *See Waldridge*, 24 F.3d at 921-22.

Second, Mr. Zierler argues that Defendants did not allow him to cross examine witnesses. *E.g.*, Dkt. 75 at 9. He relies on Federal Rule of Evidence 611 and the Confrontation Clause—both of which are irrelevant to summary judgment. *See* Fed. R. Evid. 101(a); *Crawford v. Washington*, 541 U.S. 36, 38 (2004). Moreover, almost all the declarations submitted by Defendants were from witnesses that were disclosed in Defendants' initial disclosures. Dkt. 76 at 3-4. The only declarant that wasn't in the initial disclosures, Sheriff Caruana, was named by Mr. Zierler in his amended complaint. Dkt. 43 at 3. Mr. Zierler could have deposed any of these declarants during discovery.

## IV. Conclusion

The Court finds that, based on the factual record in this case, no reasonable jury could find in favor of Mr. Zierler. In addition, two of the three defendants are not suable in this case. Defendants' motion for summary judgment is granted. This case is dismissed with prejudice.

Date: October 12, 2023

Honorable Iain D. Johnston
United States District Judge